Argued February 23, reversed March 30, 1926.

# FRED C. FELDSCHAU *v.* CLATSOP COUNTY.

## (244 Pac. 528.)

**Pleading.**

1. On demurrer to complaint, allegations therein must be accepted as true.

**Highways—Complaint Alleging That Contractor was Required to Perform Extra Work Held not to Show Such Departure from Contract as to Warrant Abandonment.**

2. In action by contractor on *quantum meruit,* complaint alleging requirement of additional work, not contemplated by contract for grading, *held* not to show such radical departure from contract as to warrant abandonment thereof.

**Contracts.**

3. Not every slight deviation from, or breach of, contract justifies abandonment thereof.

**Highways—County Roadmaster Held Required to Exercise Discretion as to Conducting Work by Contractor in Fair, Honest and Reasonable Manner.**

4. Under contract for grading providing that work should be prosecuted in order outlined by county roadmaster, such official

---

1. See 21 R. C. L. 506.
3. Right to rescind or abandon contract because of other party's default, see note in 30 L. R. A. 67. See, also, 6 R. C. L. 926.

had discretion to designate where contractor should commence work and order in which it was to be prosecuted, but such discretion must be exercised in fair, honest and reasonable manner, and his decisions were binding on contractor only when free from bad faith and not the result of gross or palpable mistake.

Contracts.

5. Every party to contract impliedly undertakes not intentionally and purposely to do anything to prevent performance by other party.

Highways—If Manner in Which Work was Directed and Supervised was so Unreasonable and Arbitrary as to Imply Bad Faith, ·Causing Contractor to have to Abandon It, He Would be Entitled to Recover Reasonable Value of Work Performed and Materials Furnished.

6. Where contract for grading provided that work should be prosecuted in order outlined by county roadmaster, if manner in which work was directed and supervised was so unreasonable and arbitrary as to imply bad faith, causing contractor ˙to have to abandon contract, he would be entitled to recover reasonable value of work performed and materials furnished.

Highways—Amended Complaint, Based on Quantum Meruit, by Contractor Abandoning Contract Because of Alleged Arbitrary and Unfair Conduct of Defendant's Roadmaster, Held to State Cause of Action on Demurrer.

7. In action by contractor on *quantum meruit*, after abandonment of contract providing that grading work thereunder should be done in order outlined by county roadmaster, amended complaint alleging that county roadmaster through acting in bad faith and arbitrary manner, had caused plaintiff great expense and forced him to abandon contract, *held* to state cause of action.

Appeal and Error—Decision on Prior Appeal Held not to Require Sustaining Demurrer to Amended Petition Seeking Recovery on Quantum Meruit.

8. In action by grading contractor on *quantum meruit* after abandoning contract, decision on prior appeal that complaint was bad on demurrer *held* not to preclude court from holding sufficient an amended complaint which alleged that defendant's roadmaster, who, under contract, had supervision of work, acted arbitrarily and in bad faith for purpose of forcing plaintiff to abandon contract.

---

Appeal and Error, 4 C. J., p. 1218, n. 26.
Contracts, 13 C. J., p. 694, n. 12.
Highways, 29 C. J., p. 609, n. 9.

From Washington: GEORGE R. BAGLEY, Judge.

Department 2.

On former appeal, judgment for plaintiff in the sum of $21,614.86 was reversed and the cause re-

---

5.  See 6 R. C. L. 1012.

manded for the reason that the complaint failed to
state facts entitling plaintiff to recover on *quantum
meruit*: 105 Or. 237 (208 Pac. 764). Plaintiff
amended his complaint; a demurrer was sustained
thereto and, upon refusal to plead further, the ac-
tion was dismissed. Hence this appeal.

REVERSED.

For appellant there was a brief over the names
of *Messrs. Hare, McAlear & Peters* and *Mr. W. G.
Keller,* with oral arguments by *Mr. Wm. G. Hare*
and *Mr. Sidney Teiser.*

For respondent there was a brief over the names
of *Messrs. G. C.* and *A. C. Fulton* and *Mr. Edw. C.
Judd,* with an oral argument by *Mr. G. C. Fulton.*

BELT, J.—The sole question for consideration is
whether the amended complaint alleges facts suffi-
cient to constitute a cause of action.

In February, 1917, plaintiff entered into a written
contract with defendant, on the unit basis, to grub,
clear, grade and drain approximately four miles of
highway in Clatsop County, at stipulated compensa-
tion and in accordance with certain plans and speci-
fications. Time was made the essence of the con-
tract and the work was to be completed not later than
July 15, 1917. In what is designated for conveni-
ence as the "north portion" of the highway or that
part thereof between Station O plus OO and Station
164 plus OO N, there was but little excavation, fill-
ing or grading required and "the soil thereof was
of a nature favorable to easy excavation and the
fills when required were not deep or difficult to
work upon." The "south portion" of the road,
about 1.2 miles in length, between Station O plus

OO and Station 63 plus 20 S "was of an extremely
difficult nature to excavate, where cuts were required,
and extremely difficult to fill where fills were re-
quired."

In the southern part of the project between two
large hills was a "Tideland Flat," over a half mile
in length which, during the months of March, April,
May and June, 1917, was "inundated or covered
with water for a large portion of the said time and
when not inundated with water was soggy." It is
alleged that "throughout said months it rained al-
most continuously and incessantly, and the condition
of the hills where the excavations were required to
be made, was such that after excavations were be-
gun it was difficult and all but impossible properly
and expeditiously to continue thereon because of the
wet and slippery condition of same due to the rains
and the travel of teams and equipment to and fro";
that in making the fill in this tide-flat plaintiff was
forced to do so in layers of dirt of one foot each
and "to roll such layers with a heavy roller";
"that by reason of inundation of said Tideland Flat
by tides from beneath and by rain from above" the
earth was "soft, miry and soggy" and the rolling
under such circumstances "would merely cause said
earth to be wasted over the sides thereof, and would
cause the roller and teams working in the same to
mire to plaintiff's great damage and expense."
Plaintiff avers that notwithstanding that defendant
and its roadmaster understood and appreciated said
conditions, the latter "in bad faith and for the
fraudulent purpose of rendering the contract impos-
sible of performance" compelled him, over his pro-
test, so to work, whereas during such time he could
have worked advantageously on the northern part

of the road where conditions were more favorable, and which was contemplated under the terms of the contract.

Under the contract it was estimated, for the purpose of comparison of bids, that there would be excavated 35,466.2 cubic yards, of which 22,564 cubic yards would be taken from the southern portion of the road. In this connection, plaintiff charges that he was obliged to excavate 33,000 cubic yards between Station O plus OO and Station 63 plus 20 S, which is 10,436 cubic yards in excess of the estimated amount.

It is averred that the roadmaster "fraudulently and for the purpose of embarrassing and harassing plaintiff and thereby causing him to abandon the contract" required him to build several private roads leading from the main road under construction, which were not within contemplation of the parties as expressed in their agreement.

Plaintiff charges that the roadmaster, in bad faith and for the purpose of causing an abandonment of the contract, required him, on certain portions of the road, to cut a foot below grade and to "dump the excavation thus taken through a hole in the bridge * * in a slow and tedious manner."

Plaintiff complains that he was required in bad faith "to excavate and tear up an old macadam road paralleling for half a mile the roadway in the south portion thereof, and in no way pertaining to the contract in question."

There are other particulars in which it is alleged the roadmaster arbitrarily and in bad faith interfered with and retarded plaintiff in his work, but those mentioned are sufficient for consideration of the legal rights of the parties involved.

Finally, it is averred that the work performed and the materials furnished are reasonably worth $29,589.83, and that no part of the same has been paid except the sum of $7,974.83.

Plaintiff seeks to recover on *quantum meruit* because he was compelled to abandon the contract on account of the alleged unreasonable, arbitrary and fraudulent interference and supervision of the roadmaster in requiring him to do work not contemplated in the contract and to perform certain other work in a manner contrary to the terms and spirit of their agreement. The legal theory upon which this action is brought is stated in 13 C. J. 693:

"Where one party has been prevented from complete performance by the act of the other party he is * * entitled to regard the contract as broken and sue for the breach, or he may recover on a *quantum meruit* for the work or material furnished." Citing numerous authorities in support of the text.

The rule is stated thus in 6 R. C. L. 987:

"In other words, a party who, being prevented by the fault of the adverse party from completing such contract in the time stipulated, goes on with the work after the time until compelled to abandon it, may recover the value of the work done on a *quantum meruit,* and is not governed by the stipulations of the contract."

In *Hayden v. Astoria,* 74 Or. 525 (145 Pac. 1072), it is said:

"It is the rule that in carrying out a contract whether time is of the essence or not, the owner cannot delay or retard the contractor in the progress of the work or prevent performance thereof without liability; and, where the owner under the contract is bound to furnish materials or do any other thing required to be done by him pursuant to the contract, he must do that thing in such a way as not to retard

the contractor; and, if through the act or omission of the owner under such circumstances the work is delayed in such a way as to make performance impossible, the contractor can recover upon the *quantum meruit.*"

Also see Williston on Contracts, Section 1459, and cases cited under note 24.

In *McCullough* v. *Baker*, 47 Mo. 401, the plaintiff agreed to do the masonry work of a church for $6,000 but was prevented from completing his job by the unwarranted acts of the other party. The court said:

"In such a case he is not restricted to a *pro rata* share of the contract price. He may either sue upon the contract and claim damages for a breach of it, or he may, as in this case, waive the contract and sue for the reasonable value of his work."

1. Accepting plaintiff's allegations as true, which we must do on demurrer, let us examine the written agreement of the parties to ascertain whether plaintiff was justified in abandoning the contract. Was he prevented from performing his contract through the default of defendant? Did the roadmaster require him to do work in a manner not contemplated by the contract?

2, 3. So far as the amount of work plaintiff performed is concerned, we think it does not appear affirmatively that there was such a radical departure from the contract as to warrant an abandonment. In this respect, the facts alleged do not come within *Hayden* v. *Astoria, supra,* or *McDonald* v. *Supple,* 96 Or. 486 (190 Pac. 315), and kindred cases. See *Inland Const. Co.* v. *City of Pendleton* (Or.), 242 Pac. 842, concerning this phase of the case. It is not every slight deviation from or breach of a contract that justifies an abandonment of it. In view of the

former opinion it is not deemed necessary to review in detail the various provisions of the contract under consideration.

4, 5. The serious charge against the defendant county is that its roadmaster, in bad faith and through arbitrary and unreasonable supervision of the work, prevented plaintiff from performing his contract and compelled him to abandon the same. If this be true, as alleged, then plaintiff, in the light of authorities cited, is entitled to recover on the *quantum meruit.* Did the roadmaster violate the intent and spirit of the contract in requiring plaintiff to work on the southern portion of the road under the circumstances as alleged? In the notice to contractors it is provided that the ''Probable Order of Work'' shall ''begin at Station 86 plus 72 and finish south to Station 63 plus 20, then begin at Station 166 plus 50 and finish south to Station 86 plus 72.'' But in the contract it is provided that ''all work shall be prosecuted in the order outlined by the county roadmaster.'' It is thus observed that the roadmaster had the power and discretion to designate where plaintiff was to commence work and the order in which it was to be prosecuted. The discretion thus vested, however, must be exercised in a fair, honest and reasonable manner. In every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part: Williston on Contracts, § 677.

Broad as the roadmaster's powers are under this contract, his decisions are binding on the contractor only when free from bad faith and not the result of gross or palpable mistake: *Ripley* v. *United States,*

223 U. S. 695 (56 L. Ed. 614, 32 Sup. Ct. Rep. 352, see, also, Rose's U. S. Notes); *Boston Store* v. *Schleuter*, 88 Ark. 213 (114 S. W. 242); *Vaughan Const. Co.* v. *Virginian Ry. Co.*, 82 W. Va. 658 (97 S. E. 278).

6. If the manner in which this work was directed and supervised was so unreasonable and arbitrary as to imply bad faith and, as a result thereof, the plaintiff was prevented from performing his contract and was obliged to abandon it, he would be entitled to recover the reasonable value of his work performed and materials furnished: *Hayden* v. *Astoria, supra; Indianapolis Northern Traction Co.* v. *Brennan*, 174 Ind. 1 (87 N. E. 215, 90 N. E. 65, 91 N. E. 503, 30 L. R. A. (N. S.) 85); *Salt Lake City* v. *Smith et al.*, 104 Fed. 457 (43 C. C. A. 637).

7. If it be true as alleged that plaintiff was required to make a fill in the "Tideland Flat" when it "was inundated or covered with water for a large portion of the time" and was obliged to roll each foot layer with a heavy roller that caused the dirt to "ooze out and waste over the side slopes" and teams and the heavy roller to become mired and stuck therein, we think that this is a matter, together with all other evidence tending to support plaintiff's allegations, to be submitted to the jury, relative to the issue of good faith in the supervision and direction of this work; and, if not in good faith, whether such unreasonable and arbitrary supervision was the direct and natural cause of plaintiff's failure to complete his contract. The contract does not require that each foot layer of earth shall be rolled with a heavy roller, but it is provided that the "embankments shall be formed of suitable material and carried up full width in layers not to exceed one foot

in thickness, and the teams shall be made to travel as evenly as possible over the whole surface of each layer, both going and coming."

We concede that if the contractor had agreed specifically to begin work on the extreme southern end of this road, he would be obliged to do what he had contracted to do, regardless of difficulties encountered. In the instant case, however, the plaintiff, under the clear meaning of his contract, had the right to assume that the roadmaster would exercise fair, reasonable and honest judgment in determining the order in which this work should be prosecuted. Whether the roadmaster did so act is a question of fact for the jury to determine, if evidence is offered on trial tending to establish plaintiff's alleged cause of action.

8. We are convinced that the amended complaint states a cause of action. It is earnestly urged by counsel for respondent, relative to such question, that the "law of the case" is settled to the contrary by this court in its former opinion. Undoubtedly such rule would be applicable if the facts alleged in the original complaint were substantially the same as those alleged in the pleading under consideration. However, if material and additional allegations have been made, we are not precluded from passing on the sufficiency of the amended complaint. It is noted that Mr. Justice RAND, speaking for the court, in the former opinion said:

"Whether or not the acts were arbitrary depended entirely upon facts not alleged in the complaint. If the officers of the county were not acting honestly and in good faith, it was incumbent upon the plaintiff to allege facts which, if established by proof, would be sufficient to overcome this presumption

(referring to good faith), and we find no such allegation in the complaint.''

We think this essential and material element is, without doubt, supplied. Therefore, the rule which respondent invokes is not applicable.

Judgment is reversed and cause remanded, with directions to overrule the demurrer and to permit defendant to answer within a time to be fixed by the lower court.                REVERSED AND REMANDED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.