Argued and submitted November 5, 1985, alternative writ of mandamus dismissed
May 20, reconsideration denied July 1, 1986

## STATE ex rel ORBANCO REAL ESTATE SERVICES COMPANY, fka Columbia Mortgage Company, *Plaintiff-Relator,*

*v.*

## ALLEN, *Defendant,* J. I. JOHNSTON CONSTRUCTION CO., INC., *Intervenor.*

### (SC S31772)

720 P2d 365

Carlton D. Warren, Portland, filed the Alternative Writ of Mandamus and answering brief for plaintiff-relator. With him on the answering brief were Warren and Allen, and Michael J. Hargis, Portland.

Thomas J. Murphy, Eugene, argued the cause and filed the defendant's brief and abstract of record and defendant's reply brief and supplemental abstract of record for defendant. With him on the brief was Cass, Scott, Woods & Smith, Eugene.

Malcolm L. Brand, Salem, filed a memorandum in support of defendant's memorandum opposing petition for writ of mandamus. With him on the memorandum was Paulus, Rhoten, Brand, Lien & McDonough, Salem.

CAMPBELL, J.

Lent, J., filed a dissenting opinion in which Carson, J., joined.

## CAMPBELL, J.

This is an original proceeding in mandamus. The relator was one of the defendants in each of four lien foreclosure cases in Lane County. The cases were consolidated. The defendant in this mandamus proceeding was the trial judge in the Lane County cases. After trial the defendant trial judge caused a decree of foreclosure to be entered. The relator appealed to the Court of Appeals. Several months later the appeal was dismissed on relator's motion. The defendant trial judge then caused to be entered an order authorizing a writ of foreclosure and pursuant thereto the Clerk of Lane County issued a writ of execution. The relator then commenced this mandamus proceeding.

This court granted an alternative writ of mandamus which required the defendant to show cause why he did not: (1) Set certain allegedly unresolved matters for trial, (2) Vacate the order for a writ of execution, and (3) Order the recall of the writ of execution. The defendant trial judge filed an answer. His chief defense is that he has previously signed and caused to be entered a judgment and decree of foreclosure which together with certain orders of dismissal "fully and conclusively adjudicated every claim presented * * * and determined the rights and liabilities of every party" in the circuit court proceeding.

This case involves the interpretation and application of ORCP 67A. and B. and ORCP 70A. The chief issue in this case is similar to that in *State ex rel Zidell v. Jones,* 301 Or 79, 720 P2d 350 (1986). Can two or more documents, which do not contain the ORCP 67B. language that "there is no just reason for delay * * * for the entry of judgment," constitute a final judgment when considered together? We hold that they do if in combination they adjudicate every claim presented and determine the rights and liabilities of each party. We dismiss the alternative writ.

This litigation arose out of the construction of a new office building in Springfield known as "Gateway Office Plaza." Allied Commercial Realty (Allied Realty) was the owner and developer of the project. The relator financed the

construction and was secured by a trust deed on the property.[1] The intervenor in this case, J. I. Johnston Construction Co., Inc., (Johnston Construction) was the general contractor. There were a number of subcontractors. The construction project ran into financial difficulties. On or about March 31, 1981, the general contractor and subcontractors who had not completed their work withdrew from the project because they were not being paid. The general contractor and the subcontractors filed construction liens. Four separate actions for the foreclosure of the various liens were filed in the Circuit Court for Lane County. The lien claimants who were not plaintiffs in the four cases sought to foreclose their liens by cross-claims. All actions and cross-claims sought foreclosure upon the same parcel of real property and the improvements thereon. The relator asserted that its trust deed upon the construction site was superior to the claims of the other lien claimants.

On November 27, 1981, the defendant as trial judge, upon motion of some of the lien claimants, consolidated all four cases. He also ordered that all further pleadings be filed under a consolidated heading bearing the number of the first case filed.[2]

Allied Realty, the former owner of the subject premises, never appeared, and an order of default was entered against it. The relator foreclosed its trust deed upon the property by a non-judicial proceeding.[3]

In February and March 1983, the defendant trial judge entered orders allowing motions for summary judgment as to seven of the subcontractors who had filed construction liens. Later the general contractor and the relator stipulated

---

[1] Relator was previously known as Columbia Mortgage Company and appears under that name in the circuit court cases.

[2] Later the "JUDGMENT AND DECREE OF FORECLOSURE" entered on April 23, 1984, recited: "These matters * * * having previously been consolidated for all purposes." In oral argument to this court, counsel for the relator conceded that the four actions were consolidated for all purposes and that consolidation was not an issue.

The consolidated heading sets out separately the name of the plaintiff and the name of the first defendant followed by the designation "et al." ORCP 16A.

[3] These facts were alleged in the defendant's opening brief in this court and are not contradicted by the relator. They are not essential to the determination of this case. We cite them only to complete the history of the case.

that a judgment be entered in favor of the eighth subcontractor. By virtue of the summary judgments and stipulated judgment, seven of the subcontractors were found to have liens upon the subject property prior to the relator's trust deed. One of the subcontractor's liens was found to be inferior to the rights of the relator and the other lien claimants.

On September 29, 1983, trial commenced on the remaining issues between the relator and Johnston Construction, the general contractor and intervenor herein. It appears from the opinion of the defendant trial judge that chief issues at the trial were the balance owed to the general contractor and the right of the relator to certain offsets. These amounts were determined and set out in the defendant trial judge's opinion of January 12, 1984.

On April 3, 1984, the defendant trial judge entered six separate documents each entitled "ORDER AND JUDGMENT OF DISMISSAL" and each with the consolidated heading and the number of the first case. The full body of the documents is as follows:

"This matter came before the Court on its own motion on March 12, 1984. The Court is now fully advised.

"IT IS HEREBY ORDERED AND ADJUDGED that all claims asserted herein by Defendant (name of designated party) are dismissed without prejudice and without costs to any party.

"IT IS FURTHER ORDERED AND ADJUDGED that all claims asserted herein by any party against Defendant (name of designated party) are dismissed without prejudice and without costs to any party."

Each of the six documents designated a defendant who had been named in one or more of the original four complaints. The eight subcontractors who previously had been allowed summary or stipulated judgments on their construction liens were not among the six defendants. None of the six documents contained the ORCP 67B. language "there is no just reason for delay * * * for the entry of judgment."

On April 23, 1984, the defendant trial judge signed a document entitled "JUDGMENT AND DECREE OF FORECLOSURE." It contained the consolidated heading and the single case number as previously ordered.

The "JUDGMENT AND DECREE OF FORE-CLOSURE" is a detailed document. The body of the document covers more than six pages of single-spaced material and 26 numbered paragraphs. It specifically found that the relator owned the real property in fee simple subject to the action but that its interest was subsequent in time and inferior in right to the claims of the general contractor and seven of the subcontractors. The document decreed a judgment in a specific sum with interest, attorney fees and costs in favor of the general contractor and against Allied Realty, the former owner and developer of the project. It further decreed that the general contractor's construction lien was a valid lien against the subject property and the improvements. The document also declared that each of the eight subcontractors has a judgment against the general contractor for a specific sum with interest, attorney fees and costs. Each of the eight subcontractor's construction liens was also declared to be a "valid and subsisting lien." The relator was given a judgment against Allied Realty for a specific sum with interest, attorney fees and costs. The document decreed that the liens be foreclosed, provided for the relative priority of the liens, determined the order in which the proceeds of the sheriff's sale should be applied, and allowed a deficiency "as provided by law" in the event the sale funds were not sufficient.

The "JUDGMENT AND DECREE OF FORE-CLOSURE" does not contain "an express determination that there was no just reason for delay" for the entry of a final judgment. ORCP 67B. It does make a final determination of the claims, rights and liabilities of each of the eight subcontractors and therefore in a sense takes the place of or supplants the previous summary and stipulated judgments. It makes a similar determination as to the claims, rights and liabilities of the general contractor, the relator and the former owner. It *does not* mention or further adjudicate the claims of the six defendants who were dismissed from the case without prejudice by the orders and judgments of dismissal entered on April 3, 1984.

On May 23, 1984, the relator filed a notice of appeal in the Court of Appeals. Thereafter, the intervenor herein, Johnston Construction, filed a cross-appeal. On December 18, 1984, the relator moved to dismiss its appeal. On January 31, 1985, the Court of Appeals entered the following order:

"Appellant * * * moves to dismiss the appeal herein on the ground that the appeal is taken from a nonappealable judgment. The motion is allowed.

"The Court on its own motion dismisses the cross-appeal herein on the same ground."

On April 14, 1985, the defendant trial judge entered an order authorizing the issuance of a writ of foreclosure pursuant to the "JUDGMENT AND DECREE OF FORECLOSURE" of April 23, 1984. Thereafter on May 13, 1985, the relator filed the petition for an alternative writ of mandamus.

The relator contends that no final judgment has been entered in the circuit court by defendant trial judge because (1) the Court of Appeals' dismissal of the appeal for lack of jurisdiction is the law of the case; (2) the rights and liabilities of Allied Realty, the former owner of the real property, have never been adjudicated as to at least six lien claimants; and (3) none of the documents entered on April 3 and April 23, 1984, complies with ORCP 67B., and the documents cannot be considered together to create a final judgment.

*Law of the Case*

The relator claims that the question of whether there is an appealable judgment was determined by the Court of Appeals when it allowed the motion to dismiss "on the ground that the appeal is taken from a non-appealable judgment." It argues that this determination, made by a superior court, is the law of the case and binding upon the defendant trial judge in this mandamus proceeding.

■ Even if we assume for the sake of argument that the "law of the case" doctrine can apply to a mandamus proceeding in which the defendant was not a party to the prior matter, the relator in this case loses the argument. The Court of Appeals' order on January 31, 1985, dismissing the relator's appeal because it was taken from a "non-appealable judgment" was based upon a motion which in part is substantially different from the relator's present position. To invoke the "law of the case" doctrine the facts and issues in the second proceeding must be the same as in the first. *Huszar v. Certified Realty Co.,* 272 Or 517, 522, 538 P2d 57 (1975); *Marr v. Putnam,* 213 Or 17, 23, 321 P2d 1061 (1958).

In the Court of Appeals the relator filed a motion "to dismiss the captioned appeal for lack of jurisdiction." The "facts and issues" upon which that motion was based were included in an attached memorandum. The relator alleged that although the defendant as trial judge in the case below consolidated the four cases, he apparently entered a judgment and decree of foreclosure in only the first case. It contended that the remaining three cases should have been dismissed. It also claimed that the rights of at least two lien claimants were adjudicated by the decree of foreclosure entered in the first case when they were not parties. The memorandum in support of the motion to dismiss states that the judgment and decree of foreclosure does not deal with the rights of four of the defendants.[4] For these reasons it was the relator's position in the Court of Appeals that a final determination of all claims had not been made in the court below.[5]

The relator, by implication in its brief and specifically on oral argument in this court, has changed its position and now concedes that the four actions were combined into a single action for all purposes and therefore it is not proper or necessary to dismiss what it previously had termed the "three remaining cases."[6]

The relator failed to call to the Court of Appeals' attention that the four defendants who were not mentioned in the decree of foreclosure previously had been dismissed as parties by the trial court orders of April 3, 1984.

The Court of Appeals may have dismissed the appeal because it thought that three remaining cases had not been

---

[4] The four defendants were A. W. McFarland, Carlton D. Warren, Jere E. Clancy and I-5 Investors, Inc. A. W. McFarland was apparently the majority stockholder of Allied Realty. Carlton D. Warren was the trustee named in the trust deed from Allied Realty to the relator. Jere E. Clancy, dba The Clancy Custom Drapery Co., was the only construction lien claimant who was named as party defendant but failed to appear in the action. I-5 Investors, Inc. was the grantee in a deed from Allied Realty which conveyed the property subject to the relator's trust deed.

[5] As far as we can tell from the record before us the relator's motion to dismiss the appeal in the Court of Appeals was unopposed. There is no answering memorandum in the record.

The defendant trial judge in this court takes the position that the relator was entitled to dismiss its own appeal at any time, for any reason or for no reason.

[6] See 9 Wright & Miller, Federal Practice and Procedure § 2382 (1st ed 1971) for analysis of the differing constructions of the term "consolidation" under FRCP 42.

dismissed or because the rights and liabilities of four defendants had not been determined by the decree of foreclosure. It follows that the "law of the case" cannot be invoked in this mandamus proceeding because the "facts and issues" are different.

*The Adjudication of the Rights and Liabilities of Allied Realty.*

■      The relator alleges that several of the subcontractors, in addition to the foreclosure of their construction liens, sought a judgment against the general contractor and Allied Realty on a *quantum meruit* basis. It contends that there was no determination of the *quantum meruit* claims of the subcontractors against Allied Realty and therefore no final judgment. The defendant trial judge counters by contending that the *quantum meruit* claims of the subcontractors against Allied Realty were alternative counts rather than independent claims for relief.

Allied Realty was the owner of the land and the developer of the "Gateway Office Plaza" project. It never appeared in the Lane County cases, and an order of default was entered against it. The relator foreclosed its trust deed on the property by a non-judicial proceeding. The decree of foreclosure confirmed that the relator was the owner in fee simple of the real property subject to that action.[7]

The relator is correct that several subcontractors did file *quantum meruit* "claims" against Allied Realty. For example, one of the subcontractors, Edgehill Enterprises, Inc., filed what it called three "causes of suit" or "causes of action": (1) For the foreclosure of its construction lien in the amount of $26,759.20 plus costs for filing fees and preparation of lien; (2) For breach of contract against Johnston Construction, the general contractor, in the amount of $26,759.20; and (3) In *quantum meruit* against Johnston Construction and Allied Realty for the reasonable value of labor and materials in the sum of $26,759.20.

In February 1983, the defendant trial judge entered

---

[7] At a time not disclosed in the record, Allied Realty conveyed its interest in the property to I-5 Investors, Inc. subject to the relator's trust deed. I-5 Investors, Inc. intervened in the Lane County case and was among the parties dismissed by the defendant trial judge on April 3, 1984. At some point I-5 Investors, Inc. filed a petition under Chapter 11 of the Bankruptcy Act.

an order awarding Edgehill Enterprises, Inc. a summary judgment "against J. I. Johnston Construction Co., Inc. and Allied Commercial Realty Co., jointly and severally, in the sum of $26,779.15" with interest and costs for filing and preparing the lien.[8] The order further provided that "attorney's fees will be determined at the time of final judgment, pursuant to ORCP 68."

Commencing on September 19, 1983, trial was held on what the defendant judge described as the remaining issues. They "concerned the various claims and counterclaims between J. I. Johnston Construction Co., Inc. and [the relator] and the claims of each of them against * * * Allied Commercial Realty Co."

On January 12, 1984, the defendant trial judge issued a written opinion which included findings of fact and conclusions of law. It did not mention the demands against Allied Realty by the several subcontractors on a *quantum meruit* basis.

On April 23, 1984, the defendant trial judge signed and entered a detailed "JUDGMENT AND DECREE OF FORECLOSURE." It recited that the trial court previously had entered orders allowing the motions for summary judgment for the various subcontractors including Edgehill Enterprises, Inc. and others similarly situated. It did not mention the *quantum meruit* "claims" or "counts" against either Johnston Construction or Allied Realty. For example, the "JUDGMENT AND DECREE OF FORECLOSURE" entered for Edgehill Enterprises, Inc. ordered, adjudged and decreed:

"3.   That Edgehill Enterprises, Inc. have judgment against J. I. Johnston Construction Co., Inc. in the sum of $26,759.20 with interest thereon at the rate of 9% per annum from March 5, 1981, until paid; in the additional sums of $10 for preparing its lien and $10.50 for recording said lien; for the further amount of $7,353.19 as attorney's fees; and for costs and disbursements in the amount of $482.50.

"4.   That the construction lien of Edgehill Enterprises, Inc. dated May 2, 1981, and recorded May 4, 1981, at Reel

---

[8] The amount of the summary judgment exceeds the amount prayed for in the complaint by $19.95. This appears to be a typographical error.

1134, Recorder's Reception No. 8119249, Official Records of Lane County, Oregon is a valid and subsisting lien against the real property described in Exhibit A hereto and against all improvements thereon for the judgment last above entered."

The other subcontractors who in their complaints sought to recover from Johnston Construction and Allied Realty on a *quantum meruit* basis were treated exactly the same as Edgehill Enterprises in the summary judgment procedure, the written opinion of January 12, 1984, and the "JUDGMENT AND DECREE OF FORECLOSURE" of April 23, 1984.

As we have previously said, the relator claims that because the defendant trial judge did not specifically rule upon the subcontractors' *quantum meruit* demands against Allied Realty in the "JUDGMENT AND DECREE OF FORE-CLOSURE" there is no final judgment within the meaning of ORCP 70A. It is undisputed that the summary judgments in favor of Edgehill Enterprises, Inc. and the other subcontractors in February 1983 were interlocutory orders.

Even though the various subcontractors in the Lane County case denominated their demands for recovery against Allied Realty as "causes of action" or "causes of suit," they were in fact alternative counts seeking the recovery of an identical sum of money on different theories. *Smith v. Williams,* 180 Or 626, 635, 178 P2d 710 (1947).

The trial court could allow the subcontractors a recovery upon only one of their alternate theories. In other words, it could allow Edgehill Enterprises, Inc. recovery of $26,759.20 only once—it could not allow multiple recovery of the same sum. The alternative counts were mutually exclusive.

It is obvious that between February 1983, when the defendant trial judge entered the summary judgment against Johnston Construction and Allied Realty and the entry of the "JUDGMENT AND DECREE OF FORECLOSURE" on April 23, 1984, he had changed his mind. The record does not give a reason for the change. It may have been at the instigation of the subcontractors—Allied Realty had been defaulted. Judgments on the *quantum meruit* counts would not give them a priority or attorney fees. The trial judge did

not forget Allied Realty. It is mentioned in other parts of the "JUDGMENT AND DECREE OF FORECLOSURE."

ORCP 70A. provides:

"Every judgment shall be in writing plainly labeled as a judgment and set forth in a separate document. A default or stipulated judgment may have appended or subjoined thereto such affidavits, certificates, motions, stipulations, and exhibits as may be necessary or proper in support of the entry thereof. No particular form of words is required, but every judgment shall specify clearly the party or parties in whose favor it is given and against whom it is given and the relief granted or other determination of the action. The judgment shall be signed by the court or judge rendering such judgment or, in the case of judgment entered pursuant to Rule 69B.(1), by the clerk."

The "JUDGMENT AND DECREE OF FORE-CLOSURE" complies with the requirements of ORCP 70A. as to the problem under consideration. It clearly specifies the "parties in whose favor it is given and against whom it is given and the relief granted." The action has been determined by one of the alternative counts. The other alternative counts are necessarily excluded. No "other determination" is necessary to describe the fate of the subcontractors' action. The phrase "the relief granted or other determination of the action" is in the disjunctive. The "JUDGMENT AND DECREE OF FORECLOSURE" describes the relief granted. In the context of this case it was not necessary to state what relief was not granted.

*The Six ORDERS AND JUDGMENTS Entered on April 3, 1984, and the JUDGMENT AND DECREE OF FORE-CLOSURE Entered on April 23, 1984.*

■     The chief issue in this case is whether the six "ORDERS AND JUDGMENTS OF DISMISSAL" and the "JUDGMENT AND DECREE OF FORECLOSURE" can be considered together to create a final judgment. This issue is the reason we allowed the alternative writ of mandamus. *See State ex rel Zidell v. Jones, supra.*

This issue requires a consideration of ORCP 67 which provides:

"A.   Definitions. 'Judgment' as used in these rules is the final determination of the rights of the parties in an action;

judgment includes a decree and a final judgment entered pursuant to section B. or G. of this rule. 'Order' as used in these rules is any other determination by a court or judge which is intermediate in nature.

"B.   When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all of the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

The relator's position is that because none of the seven documents in question contains the language required by ORCP 67B. they cannot, individually or in combination, be a final judgment.

It is conceded that this is a multiple party case involving more than one claim for relief. It is also conceded that none of the seven documents contains "an express determination that there is no just reason for delay" and "an express direction for the entry of judgment." ORCP 67B. We hold that when considered together the seven documents adjudicate every claim presented and determine the rights and liabilities of every party. This case boils down to whether the final judgment must be contained in one document. We hold that it does not for the reasons set out in *State ex rel Zidell v. Jones, supra.*

The alternative writ is dismissed.

**LENT, J.,** dissenting.

I dissent here for the same reasons as stated in my separate opinion in *State ex rel Zidell v. Jones,* 301 Or 79, 720 P2d 350 (1986).

Carson, J., joins in this dissenting opinion.